Opinion issued July 7, 2005













In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00095-CV




DANIEL LOPEZ, Appellant


 

V.

THE HOMEBUILDING COMPANY, INC. AND FRANCIS EDMON
WADDLE, Appellees




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2002-21568-A





MEMORANDUM OPINION 
          Appellant, Daniel Lopez, who sustained injuries from a fall from the second
story of a house where he had been hired to perform stone masonry work, appeals
from a final summary judgment rendered in favor of appellees, the Homebuilding
Company, Inc., which was the general contractor for the construction of the house,
and Francis Edmon Waddle, the president of the Homebuilding Company, Inc.
(collectively Homebuilding). The judgment dismissed, with prejudice, Lopez’s
negligence and gross negligence claims against Homebuilding.


 In moving for
traditional summary judgment under rule 166a(c) of the Rules of Civil Procedure,
Homebuilding contended that it was entitled to judgment as a matter of law because
Lopez was an employee of an independent contractor, to whom Homebuilding owed
no legal duty. In three issues, Lopez contends that the trial court erred by granting
Homebuilding’s motion for summary judgment because (1) the evidence raises a fact
issue whether Homebuilding had the right to control the manner, methods, and details
of Lopez’s work, (2) Homebuilding never addressed Lopez’s premises-defect theory
of recovery in its motion for summary judgment, and (3) the “deemed employer”
doctrine set forth in Etie v. Walsh & Albert Co., Ltd., 135 S.W.3d 764 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied), should be extended to workers whose
employers do not subscribe to workers’ compensation. We affirm. 
Factual Background
          In 2001, Daniel Leasure hired Homebuilding as the general contractor for the
construction of a house in Montgomery, Texas. Homebuilding contracted with a
subcontractor, Colin Magee, to provide stone masonry work on the house. Magee,
in turn, contracted with Lopez to work as a stone mason there. On May 8, 2001,
Lopez was grouting columns on the second floor balcony of the house, approximately
14 feet above the ground, when he fell from the ledge of the balcony and sustained
serious physical injuries. Standards of Review
          A party moving for a traditional summary judgment must establish that no
material fact issue exists, and that it is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22,
23 (Tex. 2000). In determining whether a disputed, material fact issue precludes
summary judgment, the court must take evidence favorable to the nonmovant as true
and indulge every reasonable inference in favor of the nonmovant. Nixon v. Mr.
Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985). If there is no genuine
issue of material fact, judgment should issue as a matter of law. Haase v. Glazner,
62 S.W.3d 795, 797 (Tex. 2001). Because the rendition of summary judgment is a
question of law, we review the trial court’s decision de novo. Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994).
          When, as here, the trial court’s summary judgment order does not specify the
ground or grounds on which summary judgment was rendered, we will affirm if any
of the grounds stated in the motion is meritorious. See Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 626 (Tex. 1996).
Premises Liability
          In his first two issues, Lopez contends that (1) the evidence raises a fact issue
whether Homebuilding, as general contractor, had the right to control the manner,
methods, and details of Lopez’s work, and (2) Homebuilding never addressed
Lopez’s premises-defect theory of recovery. We will address these issues together.
A.      Whether Homebuilding Owed a Duty to Lopez

          In its motion for summary judgment, Homebuilding asserted that Lopez’s
negligence claims failed as a matter of law because, under settled common law,


 it
owed no duty to Lopez. In a negligence action, a plaintiff must show that (1) the
defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3)
the breach proximately caused the plaintiff's injuries. El Chico Corp. v. Poole, 732
S.W.2d 306, 311 (Tex. 1987). The existence of a duty owed is a threshold
consideration, Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995), and
is a question of law for the court. Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 33
(Tex. 2002). 
          The principles that govern a general contractor’s duties to a subcontractor’s
employees determine whether Homebuilding, in its role as general contractor, owed
a duty to Lopez. See Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002). 
Homebuilding, the general contractor, owed the same duty to Lopez, an independent
contractor’s employee, that a premises owner owes to an independent contractor’s
employee. See id. at 605-06; Koch Ref. Co. v. Chapa, 11 S.W.3d 153, 155 n.1 (Tex.
1999). 
 
          1.       Premises Liability
          Homebuilding moved for summary judgment on the grounds that
Homebuilding neither retained the right to control nor actually exercised control over
the manner, methods, means, or details in which Lopez performed his work. 
Homebuilding also asserted, in its reply to Lopez’s response to Homebuilding’s
summary judgment motion, that the open balcony was an open and obvious condition
on the premises.
          A general contractor in control of the premises, here Homebuilding, can
potentially incur liability for two categories of premises-liability cases: (1) a
“premise-defect” case, in which a defect existed on the premises when the
independent contractor entered, or was created through some means unrelated to the
activity of the injured employee or his employer; and (2) a “negligent activity” case,
in which the defect arises as a contemporaneous result of someone’s negligence or
through the independent contractor’s work activity. See Bright, 89 S.W.3d at 606;
Coastal Marine Serv., Inc. v. Lawrence, 988 S.W.2d 223, 225 (Tex. 1999); Williams
v. Olivo, 952 S.W.2d 523, 527 (Tex. 1997). Whether a particular case involves a
“premises defect” or a “negligent activity” is a question of law. See Bright, 89
S.W.3d at 606-07 (comparing and contrasting both types of cases in summary-judgment context); Lawrence, 988 S.W.2d at 225 (same; further citing supreme
court’s legal conclusions categorizing case as one type or another in analogous,
directed-verdict context); Williams, 952 S.W.2d at 527 (rejecting “negligent activity”
category and categorizing case as involving “premises defect”).
          In “premises defect” cases, the premises owner or general contractor has a duty
to inspect the premises and warn its independent contractor invitees of dangerous
conditions that are not open and obvious and that the owner knows or should know
exist. Lawrence, 988 S.W.2d at 225. In this category of cases, the danger does not
arise through the work activity of the independent contractor. Id.; see Williams, 952
S.W.2d at 526-27 (holding that drill-pipe thread-protectors left on ground by work
crew during previous shift constituted premises defect).
          Here, the open balcony was a condition of the premises existing before Lopez
entered the premises. See Lawrence, 988 S.W.2d at 225. The balcony’s condition,
however, was not a concealed hazard, but was open and obvious. The record
indicates that Lopez had been working on the same balcony for two days before he
fell, Lopez was aware of the balcony’s ledge and the lack of a railing, and there is no
evidence that the balcony’s condition was in any way dangerous in itself. The record
shows, therefore, that the balcony posed no danger until Lopez fell from its edge. See
id. Only concealed hazards—dangerous in their own right and independent of action
by another—that are in existence when the independent contractor enters the premises
fall into the subcategory of premises defects. Id. Because Lopez was familiar with
the conditions of the balcony and had worked on the balcony for two days before he
fell, the evidence demonstrates that the balcony was not a concealed hazard. We
therefore hold that Lopez failed to raise a fact issue regarding a premises-defect
claim.
            2.       Right of Control 
          Lopez further contends that Homebuilding failed to adequately supervise his
work. Specifically, he contends that Homebuilding failed to ensure that he performed
his work in a safe manner, specifically, by not requiring adequate fall protection
measures. It is undisputed that no contractual agreement explicitly assigned a right
of control to Homebuilding. Lopez contends that Homebuilding owed him a duty
because Homebuilding had both a right to control and actually exercised control over
the work done by Lopez. See Bright, 89 S.W.3d at 607; Lawrence, 988 S.W.2d at
226; Mendez, 967 S.W.2d at 356.
          An owner, occupier, or general contractor, here Homebuilding, has no general
duty to see that its independent contractors perform their work activity in a safe
manner. See Bright, 89 S.W.3d at 606; Lawrence, 988 S.W.2d at 225; Mendez, 967
S.W.2d at 356. But, when a contractor actually exercises a right of supervisory
control over the employees of an independent subcontractor, that exercise of control
may trigger liability for injuries to those employees. Bright, 89 S.W.3d at 607;
Lawrence, 988 S.W.2d at 225-26; Mendez, 967 S.W.2d at 356.


 
          To raise an issue of fact concerning Homebuilding’s actual exercise of control
over the manner in which Lopez did his work, Lopez had to show that Homebuilding
had more than a right to stop the work or order it resumed, to inspect or receive
progress reports, or to make suggestions, recommendations, or revisions that need not
necessarily be followed; control must rise to a level that would have precluded
Magee’s, and thus Lopez’s, complete freedom to do the work in his own way. See
Mendez, 967 S.W.2d at 356 (citing Restatement (Second) of Torts § 414 cmt. c
(1965)). Liability for injuries to the employees of a subcontractor is commensurate
with the control retained over the “operative details” of the subcontractor’s work. See
Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 2001); Mendez, 967
S.W.2d at 355-56.
          To trigger liability, supervisory control must (1) relate to the activity that
caused the injury, (2) involve either the power to direct that the work be done in a
certain manner or forbid its being done in an unsafe manner, Lawrence, 988 S.W.2d
at 226, and (3) relate to the injury that the alleged negligence caused. Bright, 89
S.W.3d at 607; see Mendez, 967 S.W.2d at 356 (noting supreme court’s having
adopted section 414 of the Restatement (Second) of Torts and holding that same
requires “nexus” between duty of care and right of control). Essentially, the evidence
must give rise to an inference that the supervising entity specifically approved a
dangerous act. See Lee Lewis Constr., Inc., 70 S.W.3d at 783-84 (general
contractor’s supervisor approved lanyard fall-protection system and use of “bosun’s”
chair without independent lifeline and therefore retained right to control deceased
worker’s activity); see also Bright, 89 S.W.3d at 609 (“[W]e have never concluded
that a general contractor actually exercised control of a premises [when] there was no
prior knowledge of a dangerous condition and no specific approval of any dangerous
act.”) (emphasis added). 
          3.       Whether Lopez Raised a Fact Issue on Right of Control by
Homebuilding

          Homebuilding moved for summary judgment on the grounds that it owed no
duty to Lopez as a matter of law because Magee, not Homebuilding, retained the right
to control and actually exercised control over the manner, method, means, or details
of Lopez’s work. Homebuilding supported its motion with several evidentiary
exhibits. These include Lopez’s deposition testimony, which established that (1)
Lopez had never spoken with Waddle, (2) Lopez could not understand conversations
between Waddle and Magee because he does not speak English, (3) Magee provided
Lopez with instructions on how to perform his work, (4) Magee decided when Lopez
would start and stop work, (5) Lopez never showed up at any project without Magee’s
instructing him what time to be there, (6) Magee always told Lopez the specific tasks
he was to perform, (7) if Lopez had seen something unsafe he would have reported
it to Magee, (8) Magee is the person who hired Lopez, (9) Magee had the authority
to fire Lopez, (10) Magee provided Lopez with the tools to perform his work, (11)
Lopez or Magee would have erected any scaffolding, had it been required, (12) Lopez
expected that Magee would have provided safety equipment, had it been required,
(13) Lopez had been working on the balcony for two days before he fell, (14) Magee
is the only person who directed Lopez to perform his work on the balcony, and (15)
during the two days that Lopez worked on the balcony before he fell, he did not
complain to anyone regarding safety.
          Homebuilding also supported its motion with the deposition testimony of
Magee, which established that (1) Magee would provide Lopez with the required
tools, (2) Magee took Lopez to the balcony and directed him to the work he was to
perform, (3) Magee never discussed the sequencing of the balcony with
Homebuilding, (4) although Magee would decide whether the columns or the
balustrade would be erected first, columns are always erected before the balustrade,
(5) Magee did not recall any specific instructions from Homebuilding concerning the
work to be done on the balcony, (6) scaffolding at the job site was erected by Lopez
and Magee, (7) Lopez and Magee erected the columns that Lopez was grouting when
he fell, (8) Lopez was with Magee when Magee erected the columns on the balcony,
and (9) it would have been necessary to remove any safety cable in order for Lopez
to perform his work.
          Based on this evidentiary showing, Homebuilding established that it did not
actually exercise control over the details of Lopez’s work to the extent required to
trigger liability under the Bright, Lawrence, and Mendez cases and therefore
established that it was entitled to prevail as a matter of law on Lopez’s claims that
Homebuilding was negligent in its role as general contractor of the worksite premises. 
Accordingly, the burden shifted to Lopez to raise a fact issue to defeat that showing. 
See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979);
Marchal v. Webb, 859 S.W.2d 408, 412 (Tex. App.—Houston [1st Dist.] 1993, writ
denied). 
          In response to the contentions in Homebuilding’s motion for summary
judgment on the issue of control, Lopez offered summary-judgment evidence of the
following: (1) Homebuilding placed a cable around the balcony after Lopez’s fall,
(2) Homebuilding had the responsibility and a policy of securing the balcony area by
locking the door which accessed the balcony in order to prevent visitors from entering
the area, (3) Homebuilding managed the sequencing of all projects at the residence,
(4) Homebuilding directed framers to construct temporary rails on the stairwell as a
fall protection measure, (5) Homebuilding had the right to require subcontractors to
use fall protection on the second floor balcony, and (6) Homebuilding was aware that
Lopez’s activity on the balcony was done without fall protection. 
          This evidence, however, is insufficient to raise a fact issue on Homebuilding’s 
actual exercise of control over the details of Lopez’s work because the evidence fails
to give rise to any inference that Lopez was not free to “do the work in his own way.” 
See Mendez, 967 S.W.2d at 356. Although Lopez contends that Homebuilding
exercised control by installing a safety cable around the balcony after Lopez’s fall,
by constructing temporary rails on the stairway, and by having a policy of locking the
door to the balcony to control access to the balcony, these acts are insufficient to
subject Homebuilding to liability. As the supreme court has stated, “merely
exercising or retaining a general right to recommend a safe manner for the
independent contractor’s employees to perform their work is not enough to subject
a premises owner to liability.” Bright, 89 S.W.3d at 607 (quoting Koch, 11 S.W.3d
at 155).
          Furthermore, if a premises owner exercises control by requiring a subcontractor
to comply with its safety regulations, the premises owner owes the subcontractor’s
employees a narrow duty of care—to ensure that the owner’s safety requirements and
procedures do not unreasonably increase the probability and severity of injury. 
Bright, 89 S.W.3d at 607. Under the record before us, there is no evidence that the
probability and severity of injury to subcontractors increased due to Homebuilding’s
putting up a safety cable around the balcony after Lopez’s fall, temporary rails on the
stairway, or the door-locking policy, and Lopez has not asserted that the probability
and severity of injury to subcontractors increased based on any of these. See id.



          Lopez further contends that a fact issue exists whether Homebuilding exercised
control because Homebuilding admitted that it retained the right to require
subcontractors to use fall protection on the second floor balcony and was aware that
the balcony had no railing. Lopez relies on Lee Lewis Constr., Inc. In contrast to the
record here, the record in that case showed that the general contractor’s
superintendent personally witnessed and approved the specific fall-protection system
used by the subcontractor, and that the general contractor approved the lanyard
system and knew of and did not object to the subcontractor employee’s using a
“bosun’s chair” without an independent lifeline. See Lee Lewis Constr., Inc., 70
S.W.3d at 784. Here, no evidence shows that Homebuilding specifically approved
the safety methods used by Magee and Lopez while working on the balcony. See
Bright, 89 S.W.3d at 609 (stating, “[W]e have never concluded that a general
contractor actually exercised control of a premises [when] there was no prior
knowledge of a dangerous condition and no specific approval of any dangerous act.”)
(emphasis added). 
          Lastly, Lopez contends that Homebuilding scheduled other subcontractors to
work simultaneously with Lopez in the area beneath him and thus prevented
scaffolding from being used to prevent Lopez’s fall. Lopez argues that he was not
free to work in a safe manner because scaffolding available at the job site could not
be used because it would have conflicted with Homebuilding’s sequencing of
projects. As stated above, however, the summary judgment record shows that Magee
was solely responsible for controlling Lopez’s work. There is no evidence in the
record that Homebuilding was involved in any manner with controlling the timing
and sequence of Lopez’s work and deciding which of Magee’s employees should
perform what task and at what point in time. See id.
          Here, as in Bright, Lawrence, and Mendez, there was no fact issue raised to
suggest that Homebuilding specifically approved a dangerous act. See Bright, 89
S.W.3d at 609. Because Lopez did not raise an issue of fact sufficient to show a
causal nexus between his injuries and any supervisory control either retained or
actually exercised by Homebuilding over the operative details of Lopez’s work,
Lopez failed to show that Homebuilding owed him a duty of care under the common
law. See Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998) (noting that
absence of recognized legal duty ends inquiry into negligence liability). Because the
summary judgment record established that Homebuilding did not owe Lopez a duty
of care based on Homebuilding’s status as general contractor under the common-law
theories asserted by Lopez, we conclude that the trial court properly rendered
summary judgment in favor of Homebuilding. 
          We overrule Lopez’s first and second issues.
Etie v. Walsh & Albert Co., Ltd. 
          In his third issue, Lopez contends that the “deemed employer” doctrine set
forth in Etie v. Walsh & Albert Co., Ltd. should be extended to workers whose
employers do not subscribe to workers’ compensation. See Etie v. Walsh & Albert
Co., Ltd., 135 S.W.3d 764 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Lopez
raises this argument for the first time on appeal. Issues that a nonmovant contends
avoid the movant’s entitlement to summary judgment must be expressly presented by
written motion or by other written response to the trial court. Tex. R. Civ. P. 166a(c)
(providing that issues not expressly presented to the trial court may not serve as
grounds for reversal of summary judgment on appeal); Clear Creek, 589 S.W.2d at
675. Because Lopez did not raise the argument below, he has waived this issue for
appellate review. 
          We overrule Lopez’s third issue.
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 

                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Justices Taft, Alcala, and Higley.